## Gabbard v. Commonwealth.

October 5, 1948.

Chester A. Bach and Martin & Martin for appellant.

A. E. Funk, Attorney General, and Squire N. Williams, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Under an indictment charging him with the crime of rape, and carnally knowing a female above the age of twelve years, appellant was convicted and sentenced to serve ten years in the state reformatory. For grounds for reversal he contends the Court failed to instruct the jury on the whole law of the case, and that in the closing argument counsel for the Commonwealth transcended the rules of propriety in misquoting the evidence, and indulged in abusive and inflammatory language to the prejudice of appellant.

Although appellant concedes that the evidence introduced by the Commonwealth was sufficient to submit the case to the jury and is sufficient to support the verdict, it is necessary for us to give a brief resume of the evidence, especially that offered by the Commonwealth, in order to determine whether the Court failed to instruct the jury on the whole law of the case. The prosecuting witness Pauline Baker, who was fifteen years of age at the time of the alleged commission of the crime, was a student in the sophomore class at Robinson High School in Perry County. She was accustomed to riding to and from school in a bus provided for that purpose. She attended school on Thursday the 6th day of February, 1947, but because of the condition of the highways spent the nights of the 6th and 7th at the home of one of her school-mates. The roads were extremely slippery, and snow impeded travel, but about 1:00 P. M. on February 8th, she left the home of her friend for the purpose of riding a bus to her home, which is beyond the township of Dwarf in the direction of Hazard. At the suggestion of one of her neighbors she entered an automobile operated by a man wearing sun glasses; neither he nor she ever had seen the other before. She told the driver where she lived, and he agreed to take her home. But, according to her testimony, he turned toward Hindman instead of Hazard upon leaving Dwarf. The driver drove beyond Hindman approximately two miles, reversed the direction of his travel, and parked "off the road." She testified:

"There was a little country road up in there just a little, he pulled the car off the road just a little way. He

raped me. He put me down in the seat, put my head under the steering wheel, got on top of me, I tried to scoot out from under him. He pressed my head against the door and pulled me down in the seat. He did that about ten minutes. He got back up and started the car.''

She previously had testified that when the driver of the car first stopped she hallooed ''help'' once, but there was no one within hearing distance. She testified that the condition of the highway required the driver of the automobile to proceed at a slow rate of speed. She stated that there were several people on the streets when they drove through Hindman but she ''didn't think about hollering.'' In answer to the following question she made the following answer. Question: ''Speaking of the time when the act of intercourse was had, did you tell him to hurry up you wanted to go home?'' Answer: ''Yes.'' She stated that the alleged crime was committed on Troublesome Creek approximately seventeen miles from the place she entered the stranger's car. After the alleged crime was committed the driver of the car proceeded in the direction of the witness' home, but at her request stopped at the residence of one of her neighbors. She requested the father of her friend to tell the driver of the automobile, who was waiting for her, that she would ride a bus home, and for him not to wait. The father delivered the message and the stranger drove on. Mr. Miller, the neighbor, corroborated Pauline as to what occurred at his house. He stated that Pauline appeared nervous when she first came to the house, but there was no other visible evidence that anything unusual had occurred. The Commonwealth introduced Robert Riley, Deputy Sheriff of Knott County, and his son Albert Riley. Both testified that they saw a car parked at the place claimed by the prosecuting witness, and that a girl and a man were the sole occupants of the car. They positively identified the appellant as the man and Pauline Baker as the girl. They had never seen either before or after, except at the time of the trial. They passed within a few feet of appellant's car, and were driving at a very slow rate of speed. When they drove alongside the car they could see plainly through the glass. The girl looked squarely at them as they passed, but made no outcry, or any sign, that she was in trouble. Pauline denied having seen the Rileys.

She returned home on Sunday, February 9th, and her mother testified that she then was menstruating for the first time in her life. She promptly told her mother that she had been the victim of the crime of rape committed on her by the stranger. Her mother testified that she took her daughter to a hospital at Hazard, where she was examined by a nurse, but she did not see a doctor. The nurse was not introduced as a witness. She took her back to the hospital on the following day and saw a Mrs. Combs the "head nurse" who examined her, but who likewise was not called as a witness. She testified that she then took Pauline to Doctor Ritchie's office, but the doctor did not make an examination of the girl. She then went to the sheriff's office and reported the crime. Pauline described the perpetrator of the crime, and the automobile in which she alleged the crime was committed. The officers, following the description, made an investigation; and in company with Pauline arrested appellant in Letcher County at about 2:00 A. M. on the morning of February 12th. Pauline identified him, as well as the automobile, which was parked with other cars at a construction camp near Jenkins. Appellant's defense was an alibi covering what he contends to have been his every movement on the afternoon the crime allegedly was committed. He introduced ten reputable witnesses in support of his alibi, and if the testimony of these witnesses, or any substantial number of them, is true, appellant could not have committed the crime.

The Court instructed the jury as follows:

"(1) If the jury believe from the evidence beyond a reasonable doubt that in Knott County, Kentucky, on February 8, 1947 and before the finding of the indictment herein, which finding of the indictment was March 6, 1947, the defendant, Edd Gabbard, feloniously had unlawful carnal knowledge of Pauline Baker by force and against her will at a time when said Pauline Baker was over the age of twelve years, you should find him guilty of rape, and fix his punishment at death or by confinement in the state reformatory for life without privilege of parole, or by confinement in the penitentiary for life, or by confinement in the penitentiary for not less than ten years nor more than twenty years."

Instruction No. 2, which was the only other instruc-

tion given, incorporates the law in respect to reasonable doubt and presumption of innocence. The indictment was drawn and the jury instructed under the provisions of KRS 435.090 which provides:

"Any person who unlawfully carnally knows a female of and above twelve years of age against her will or consent, or by force or while she is insensible, shall be punished by death, or by confinement in the penitentiary for life without privilege of parole, or by confinement in the penitentiary for life, or by confinement in the penitentiary for not less than ten years nor more than twenty years."

Section 435.100 provides:

"(1) * * *, any male person who carnally knows, with her consent, any female child, not his wife, * * * shall: (a) * * *.   (b) If the child is of the age of twelve years and under sixteen, be confined in the penitentiary for not less than five nor more than twenty years."

In Gilley v. Commonwealth, 280 Ky. 306, 133 S. W. 2d 67, 73, the Court pointed out that the offense of carnally knowing a female of twelve years, but under the age of sixteen, is a degree of the crime of rape. In that case the defendant denied committing any criminal act upon the body of the prosecuting witness, and she testified that the alleged act was committed without her consent, and against her will. Notwithstanding this, the Court was of the opinion that the jury could infer consent from the evidence adduced, and reversed the judgment because of the failure of the trial Court to instruct on attempted rape and carnally knowing a female of the age of twelve but under the age of sixteen years. In Merriss v. Commonwealth, 287 Ky. 58, 151 S. W. 2d 1030, 1034 the prosecuting witness testified that the defendant had carnal knowledge of her by force and against her will, but the defendant flatly contradicted that testimony, and stated that he merely saw and spoke to the girl on the occasion mentioned. The Court held that there was sufficient evidence to sustain the jury's finding that the act was accomplished against the will of the prosecuting witness but further said:

"In view of the fact, however, that the girl's testimony was clearly subject to the legitimate inferences,

first, that carnal knowledge was not actually consummated and, second, that, if it was, it was with her consent, we cannot escape the conclusion that an error was committed in failing to instruct on the common-law misdemeanor of attempting to have carnal knowledge of her with her consent. This misdemeanor is a degree of the common-law crime of rape, Nider v. Com., 140 Ky. 684, 131 S. W. 1024, Ann. Cas. 1913E, 1246, and by reason of this failure to instruct on this included offense the judgment must be reversed. It is appellant's argument that error was committed in failing to instruct on the common-law crime of attempted rape but this argument is sound only to the extent indicated, namely, that an instruction should have been given on attempt to commit the felony created by Kentucky Statutes, section 1155 (KRS 435.100)."

No evidence was presented in this case from which the jury could infer a mere attempt at rape. The evidence for the Commonwealth, however, is susceptible of the inference that the crime was committed, if at all, with the consent of the prosecuting witness. The evidence susceptible of such inference is, that although she spent the night with one of her girl friends, the prosecuting witness did not indicate to her that she had been abused; in traveling at a very slow speed through Hindman she had an opportunity to call for help and failed to do so; and she likewise failed to call for help when Mr. Riley and his son were in extremely close proximity to her, and according to their testimony, she looked squarely at them. She was examined by two nurses and failed to produce them as witnesses, and the jury could have inferred that not having menstruated previously, the appearance of blood frightened her into telling a falsehood to explain the condition which she might have thought resulted from the intercourse and which would have been discovered by her mother in due time. That being true, and following the reasoning in the above styled cases and the cases cited in those opinions, we have concluded that the Court erred in not giving an instruction under KRS 435.100, subsection 1(b), for which reason the judgment must be reversed.

We deem it unnecessary to discuss the contention that counsel for the Commonwealth was guilty of erroneous and inflammatory statements prejudicial to the

substantial rights of the accused in his closing argument, because the same statements likely will not be made on the second trial; therefore, we specifically reserve the question with the admonition to counsel to confine his argument to a discussion of matters introduced in evidence and to refrain from indulging in remarks calculated to excite the passion and the prejudices of the members of the jury.

The judgment is reversed with directions that it be set aside and that appellant be granted a new trial to be conducted in conformity with this opinion.